UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON RYAN, IV,

               Plaintiff,                   Case No. 2:16-cv-14148
                                           District Judge Stephen J. Murphy, III
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMAND THIS CASE TO THE COMMISSIONER (DE 15)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (DE 13), **DENY** Defendant's motion for summary judgment (DE 15),

and **REMAND** this matter to the Commissioner for a reversal and modification to

include ongoing benefits, subject, of course, to periodic review.  20 C.F.R. §§

404.1594(a).

**II.**    **REPORT**

      Plaintiff, Clifton Ryan IV, brings this action under 42 U.S.C. §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") partially denying his application for disability insurance (DI)

benefits.  This matter is before the Undersigned for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 13), the Commissioner's cross-motion for summary judgment (DE 15), Plaintiff's response (DE 16), and the administrative record (DE 6).

### A.    Background and Administrative History

Plaintiff was a standout linebacker in high school at Arthur Hill in Saginaw, Michigan, a defensive end and defensive tackle at Michigan State University, where he became captain in his junior year and senior years, and a starting NFL defensive tackle and defensive nose guard with the St. Louis Rams.  He played for three full NFL seasons before suffering career-ending traumatic brain injuries (TBI) in his fourth NFL season.  (R. 149-154, 158-159, 185; DE 13 at 8-9; DE 15 at 5.)  He alleges his disability began on October 20, 2010, at the age of 26.  (R. at 254.)  He lists headaches, neck pain, back pain, mental fog, mental fatigue, post-concussion syndrome, social anxiety and vision problems as the conditions that limit his ability to work.  (R. at 273.)  His application for DIB was denied initially on December 6, 2013.  (R. at 189-209.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 210-211.)  On June 22, 2015, ALJ JoErin O'Leary held a hearing.  (R. at 135-188.)  On September 4, 2015, she issued a "partially favorable" decision, basically concluding that Plaintiff was disabled as defined by the Social Security Act from

October 20, 2010 through April 22, 2014, but his disability ended on April 23, 2014.  (R. at 13-36.)  On September 28, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6, 10-12.)  Thus, ALJ O'Leary's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 23, 2016.  (DE 1.)

### B.     Plaintiff's Medical History

The administrative record contains more than 200 pages of medical records, of which Exhibits 1F through 16F were available to the ALJ at the time of her September 4, 2015 decision.  (R. at 35-36, 363-566; *see also* R. at 97-103, 343-349 [Ex. 12E].)  Given the ALJ's "partially favorable" ruling, the medical records most pertinent to this appeal are those dated on or after April 22, 2014.  On that note, the administrative record also contains copies of Plaintiff's GEC Psychological Consultants questionnaire, dated June 25, 2015 (R. at 104-115), as well as GEC Psychological Consultants "Client Session Notes" and "Personal Progress Notes," dated July 2015 through March 23, 2016 (R. at 116-134), both of which appear to have been submitted to the Appeals Council on April 11, 2016.  (*See* R. at 5-6, 350.)  The medical records will be discussed in detail, as necessary, below.

### C.     Hearing Testimony

#### 1.     Plaintiff's Testimony

3

Plaintiff testified at the June 22, 2015 hearing, when he was 31 years old. (R. at 146-181.)  As Plaintiff is not expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will forego further summary of Plaintiff's testimony here and will only refer to it as necessary below.

### 2.       Vocational Expert Testimony

Vocational expert (VE) Jessica Christensen testified at the hearing, providing answers to three hypothetical questions.  (R. at 181-184, 319-322.)  The VE testified that an individual subject to the conditions in the first hypothetical, the details of which will be discussed further below, could perform work such as a garment sorter, folder, and assembler of small products.  (R. at 182-183.)

The second hypothetical involved an individual who was "not able to maintain regular attendance" such that he or she would "be unpredictably absent . . . about four times a month on an unpredictable basis."  The third hypothetical concerned an individual who "would not be able to maintain concentration and attention over the course of an eight hour day," such that he or she would "be off task about 20 percent of the time."  The VE testified that each of these conditions would be work preclusive.  (R. at 184.)

### D.       The Administrative Decision

On September 4, 2015, ALJ O'Leary issued her decision.  (R. at 13-36.)  At

**Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had not

engaged in substantial gainful activity since October 20, 2010, the date Plaintiff

became disabled.  (R. at 20.)  At **Step 2**, the ALJ found that, from October 20,

2010 through April 22, 2014, the period during which Plaintiff was under a

disability, he had the following severe impairments:  obesity, major depressive

disorder, and tendinosis of the shoulders bilaterally, as well as degenerative disc

disease of the thoracic spine, lumbar spine, and cervical spine, and migraine

headaches and neurocognitive disorder due to a TBI.  (R. at 20-21.)  After

performing **Steps 3 through 5** of the sequential evaluation process for this same

time period, the ALJ concluded that Plaintiff was under a disability, as defined by

the Social Security Act, from October 20, 2010 through April 22, 2014.  (R. at 21-

26.)

Having previously observed that, on April 23, 2014, a "medical

improvement occurred that is related to the ability to work," (R. at 17), the ALJ

then applied the eight step evaluation process set forth in 20 C.F.R. § 404.1594(f).[2]

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] "The implementing regulations set forth a multi-step analysis the Commissioner must follow to assess whether a claimant's disability continues following a finding of disability."  *Campbell v. Comm'r of Soc. Sec.*, No. 10-13098, 2011 WL 2160460, at *3 (E.D. Mich. June 1, 2011) (Duggan, J.) (referencing 20 C.F.R. § 404.1594(f)).  *See also Page v. Comm'r of Soc. Sec.*, No. 16-11947, 2017 WL 2889000, at *2 (E.D. Mich. July 6, 2017) (Lawson, J.).

Having previously concluded that Plaintiff had not engaged in substantial gainful activity since October 20, 2010 (R. at 20), the ALJ proceeded to **Step 2**, and concluded that, beginning April 23, 2014, Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 26-27.)  At **Step 3**, the ALJ concluded that medical improvement occurred as of April 23, 2014, the date Plaintiff's disability ended. (R. at 27-28.)  At **Step 4**, the ALJ found that the medical improvement that had occurred was related to the ability to work, because there had been an increase in Plaintiff's residual functional capacity ("RFC").  (R. at 28.) [3]  At what was, essentially, **Step 6**, the ALJ concluded that Plaintiff's current severe impairments were the same as those present from October 20, 2010 through April 22, 2014.  (R. at 26.)  At **Step 7**, the ALJ evaluated Plaintiff's RFC and determined that, beginning April 23, 2014, Plaintiff has had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b) except the claimant would be limited to light exertional work and should not be required to perform any overhead reaching.  The claimant should not be required to kneel or crawl.  The claimant should not be required to climb ladders, ropes, or scaffolds.  The claimant should not be required to work around unprotected heights or dangerous moving mechanical parts.  He should not be required to work around any occupational vibration.  The claimant would be limited to simple,

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> routine tasks, which are not performed at a production rate pace. The claimant could tolerate occasional interaction with supervisors and co-workers, but should not be required to work with the general public. The claimant could tolerate relatively few changes in a routine work setting.

Also, the ALJ determined that Plaintiff was still unable to perform past relevant work. (R. at 28-31.) At **Step 8**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, beginning April 23, 2014, there have been jobs that exist in significant numbers in the national economy that Plaintiff can perform; stated otherwise, the ALJ concluded that Plaintiff's disability ended April 23, 2014. (R. at 31.)[4]

### E.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

---

[4] "ALJs employ an eight-step sequential analysis in Title II claims . . . when assessing a continuation of benefits case." *Thomas v. Comm'r of Soc. Sec.*, No. 1:16-CV-262, 2017 WL 127509, at *2 (W.D. Mich. Jan. 13, 2017) (referencing 20 C.F.R. § 404.1594(f)). As the ALJ in this case acknowledged, "[i]f the medical improvement is related to the ability to work," the ALJ bypasses Step 5 and "the analysis proceeds to the sixth step . . . ." (R. at 20.)

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under
this standard, "substantial evidence is defined as 'more than a scintilla of evidence
but less than a preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241
(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.
1994)).  In deciding whether substantial evidence supports the ALJ's decision, the
court does "not try the case *de novo*, resolve conflicts in evidence or decide
questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);
*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,
to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.
The Court must "'take into account whatever in the record fairly detracts from
[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,
395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487
(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this
Court defers to that finding 'even if there is substantial evidence in the record that
would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,
581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).
Finally, even if the ALJ's decision meets the substantial evidence standard, "'a
decision of the Commissioner will not be upheld where the SSA [Social Security

Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

F.    **Analysis**[5]

1.    **The Commissioner bears the burden of proof when applying 20 C.F.R. § 404.1594.**

As its title suggests, the SSA applies Section 404.1594 to "determine whether your disability continues or ends."  Unlike most issues in most social security appeals, "the ultimate burden of proof lies with the Secretary in termination proceedings."  *Nierzwick v. Com'r of Soc. Sec.*, 7 F. App'x 358, 361 (6th Cir. 2001) (internal citation omitted).  *See Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir.1991) ("It remains to be seen whether courts reviewing termination decisions will adopt a shifting burden of proof similar to that employed in reviewing initial disability determinations.  Such a shifting burden could run

---

[5] At the outset, the Court notes that Plaintiff's brief in support of his motion for summary judgment does not comply with E.D. Mich. LR 5.1(a)(2) ("Format."). Perhaps this is because Plaintiff's counsel's June 18, 2015 letter to ALJ O'Leary and April 11, 2016 letter to the Appeals Council bear some resemblances to the motion at bar.  (*Compare*, *generally*, R. at 323-337, 350-362, DE 13 at 8-42). Further, and at the risk of imitating that which I criticize, Plaintiff's use of massive footnotes (*see* DE 13 at 37-40) is distracting.  More significantly, the use of such lengthy, single-spaced footnotes in this manner effectively allows a party to exceed the page limitation through the back door.  The Court already granted Plaintiff's request to have an additional 13 pages in his brief.  Excessive footnoting essentially makes it even longer than the generous 38 pages permitted.

contrary to § 423(f), as the statute clearly places the ultimate burden of proof on

the Secretary.") (internal citations omitted).  *See also Kennedy v. Astrue*, 247 F.

App'x 761, 765 (6th Cir. 2007).  "In a termination of benefits case, the

Commissioner bears the burden of proving both that (1) a claimant's medical

condition has improved so as to increase his or her ability to work, and (2) the

claimant is currently able to engage in substantial gainful activity."  *Patton v.*

*Massanari*, 20 F. App'x 788, 790 (10th Cir. 2001).  *See also Glenn v. Shalala*, 21

F.3d 983, 987 (10th Cir. 1994) ("[T]he Secretary has recognized that before

termination of benefits, the Secretary has the burden of showing that a claimant has

the ability to engage in substantial gainful activity.") (referencing various

subsections of 20 C.F.R. § 404.1594).  Stated otherwise,

> If the Government wishes to cut off benefits due to an improvement in
> the claimant's medical condition, it must demonstrate that the
> conditions which previously rendered the claimant disabled have
> ameliorated, and that the improvement in the physical condition is
> related to claimant's ability to work.

*Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991) (citing 20 C.F.R. §

404.1594(b)(2)–(5)).

> ### 2.   The Commissioner has not met the burden of proof as to whether a medical improvement had occurred as of April 23, 2014 such that Plaintiff became gainfully employable.

Plaintiff argues that the ALJ erred in finding that Plaintiff's condition

"improved sufficiently by April 23, 2014, [so] that he could perform work existing

in significant numbers." In Plaintiff's opinion, "the competent evidence of record establish[es] that [his] period of disability is ongoing in nature." (DE 13 at 33.)

As noted above, the ALJ determined at Step 3 that "[m]edical improvement occurred as of April 23, 2014, the date the claimant's disability ended . . . [.]" (R. at 27-28.) At Step 4, the ALJ found that this medical improvement "is related to the ability to work[,] because there has been an increase in [Plaintiff's] [RFC][.]" (R. at 28.) Then, the ALJ concluded that, **beginning April 23, 2014**, he had the same RFC as previously assessed, except **Plaintiff no longer had the attendance / absence restriction**. (*Compare* R. at 22, 28; *see also* DE 13 at 37.)

These conclusions are at the heart of Plaintiff's appeal, as he argues there has been "no showing of any improvement in [his] mental disability[,]" and there was no "material change" to his capacity "to perform gainful work on a regular and sustained basis[.]" (DE 13 at 35; *see also* DE 13 at 37.) Plaintiff also asserts that "the overwhelming weight of the evidence establishes that Plaintiff's condition was no different on April 23, 2014, than it had been over the course of the months and years leading up to that date." (DE 13 at 36.)

### a. The ALJ's Step 3 conclusion that medical improvement occurred as of April 23, 2014

"Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that

there has been a decrease in medical severity must be based on improvement in the

symptoms, signs, and/or laboratory findings associated with your impairment(s)."

20 C.F.R. § 404.1594(b)(1).  Citing this regulation, the ALJ determined at Step 3

that "[m]edical improvement occurred as of April 23, 2014, the date the claimant's

disability ended[.]"  (R. at 27.)

This determination is not supported by substantial evidence.  In support of

her determination that medical improvement regarding Plaintiff's TBI – his

"primary condition" - had occurred as of April 23, 2014, the ALJ expressly stated:

- Plaintiff's "April 22, 2014 report states that his headaches *decreased* and that he was 70 percent improved. . . . Dr. Collins also stated that the claimant had a fairly stable appearance since his last evaluation one year ago."

- "[T]he claimant even testified that at one point, he was unable to go shopping without forgetting his location.  However, he testified that he no longer has this issue."[6]

(R. at 28 (emphasis added).)  The ALJ then stated, "[c]ollectively, this evidence

suggests improvement in the claimant's condition, and that he is no longer

disabled."  (*Id*.)

This interpretation of the April 22, 2014 opinion is somewhat inaccurate.

True, the notes of neuropsychologist Michael Collins, Ph.D., and/or

---

[6] Presumably, this is a reference to Plaintiff's June 22, 2015 testimony that at one point, apparently in 2010, he "was in Target and didn't realize [he] was in Target[,]" but that has not happened since.  (R. at 153-154.)

neuropsychology fellow Alicia Sufrinko, Ph.D., state that "[o]verall, Clifton feels

he is 70% back to his baseline functioning[;]" and that "Clifton's presentation is

fairly stable since last evaluation a year ago . . .[.]"  (R. at 498.)  However, the

notes also state that his presentation is "consistent with persistent postconcussive

deficits."  Perhaps more importantly, as to headaches, the notes state:  **(a)** "His

headaches reportedly *occur about half of the days of each month, somewhat less*

*intense at 4/10 at worst*[;]" **(b)** "[h]eadaches are consistently in left temporal

region of his head and a pressure sensation[;]" and, **(c)** "VOMs were remarkable

for mild headache at baseline."  (R. at 498 (emphasis added)).[7]

Given the ALJ's statement at Step 4 that "[t]he claimant's improved

migraine condition supports the finding that the claimant would no longer be

absent at least 4 times per month[,]" (R. at 29), a related discrepancy in the ALJ's

interpretation of the records as to this subject may well be material.  Here, it is not

clear whether the "decrease" in headaches was in frequency – as this portion of the

ALJ's decision seems to suggest – or intensity.  And, while Plaintiff admits in his

motion that the headaches were "temporarily improved," (DE 13 at 37-38 n.9), the

Court is still perplexed by the record, as what appears to be Dr. Collins's

preceding, March 26, 2013 report, notes:  "he is having persistent headaches that

---

[7] VOMS appears to be a reference to Vestibular / Ocular Motor Screening.  *See* www.nih.gov.

are improved, though still present 3/7 days per week and rate up to around a 3 on a

10 scale." (R. at 433.) In other words, it is questionable whether his headaches

*improved* from March 2013 to April 2014. The same is true as to verbal memory,

which had decreased from the 12th to 2nd percentile, and visual motor speed, which

had decreased from the 57th to 32nd percentile. (*Compare* R. at 533, R. at 498.)

In support of the argument that Plaintiff was "no longer disabled as of April

23, 2014[,]" the Commissioner points to, *inter alia*:

- office notes from March 2011, in which Dr. Collins states, "I feel he will be able to play football *in the future* . . . [,]" (R. at 444 (emphasis added)),

- records from April 2011, in which Dr. Collins states, "I do fully anticipate that he will be able to return to football *in the near future*[,]" (R. at 441 (emphasis added)), and

- the more crucial record from April 22, 2014 (which I discuss in further detail *infra.*), in which Dr. Collins states that he feels that Plaintiff is capable of "*ultimately* holding a full time job[.]" (R. at 498) (emphases added).

(DE 15 at 11.)[8] Contrary to Defendant's take on it, I agree with Plaintiff that this

indicates that, as of April 22, 2014, Dr. Collins did *not* feel that Plaintiff had the

capability of *then* holding down a full time job. (DE 13 at 40 n.16, DE 16 at 3-4.)

To the contrary, the word *ultimately* implies "in the future" or "somewhere down

_____

[8] In citing these notes, the Commissioner likens the April 2014 notation of being "70% back to his baseline functioning[,]" to the improvement Plaintiff experienced in Spring 2011. (DE 15 at 11.) However, it is worth noting that, later in 2011, Dr. Collins felt it was "in Cliff's best interest to retire from football . . . [,]" and opined that "Cliff will be unable to return to professional football . . . ." (R. at 437, 440.)

the road," not "at present."  Consistent with this, while Dr. Collins favors

Plaintiff's desire to finish college, he *does not believe* that Plaintiff can return

*fulltime*, as he recommends that Plaintiff only take a half-load and provides

"academic accommodations."  (R. at 498.)  The chart also reflects anxiety,

environmental sensitivity and ongoing psychotherapy.  (R. at 496, 498-499.)  Dr.

Collins concludes his chart note from the April 22, 2014 visit with the words

"prognosis for further recovery poor at this point."  (R. at 499.)   None of this

seems to track with a person who is capable of fulltime work at the time that the

record was made, and doing things "on a full-time basis" was a focus for the ALJ.

(R. at 181.)  .

    In fact, the ALJ herself expressed difficulty understanding Dr. Collins's

advice about school, as reflected in the following question to Plaintiff:

> . . . on the one hand, he says he feels you're capable of returning to
> school and ultimately holding a full-time job, which to me, doesn't
> sound like maybe he thinks you're ready for that right now.  I'm not
> entirely sure what that means, or maybe just means you need to finish
> school to get the full-time -- I'm not entirely sure.  But he does say he
> thinks a reduced course load initially.

(R. at 177-178.)  In any event, the Undersigned agrees with Plaintiff that the April

22, 2014 assessment of Plaintiff's presentation as "fairly stable since last

evaluation a year ago," militates against a finding that he had improved.  (R. at

498, DE 13 at 38 n.10.)

**b.    The ALJ's Step 4 conclusion that there has been an increase in Plaintiff's RFC as of April 23, 2014**

The ALJ concluded that Plaintiff's medical improvement was related to his ability to work, because there had been an increase in his RFC.  Stated otherwise, there had been "[a] decrease in the severity of an impairment as measured by changes (improvement) in symptoms, signs or laboratory findings . . ." that resulted in "an increase in the functional capacity to do work activities."  20 C.F.R. § 404.1594(b)(4)(i).  However, the ALJ's Step 4 conclusion that there has been an increase in Plaintiff's RFC - namely, Plaintiff no longer had the restrictions of "cannot maintain regular attendance" such that he "would be unpredictably absent from work more than 4 times per month" - is not supported by substantial evidence.

**i.    The April 22, 2014 Collins / Sufrinko opinion**

In support of her conclusion that the medical records from April 22, 2014 forward "do not fully support the . . . allegation of disability[,]" the ALJ again relied upon the Collins / Sufrinko opinion.  The ALJ noted Plaintiff's headache rating of "4/10 at worst," that his sleep was "much improved," and that he was getting "8-9 hours of sleep per night."  (R. at 29, 498.)  Then, after noting that Plaintiff "attributes his improvement to increased physical activity," which is slightly inaccurate as the report says he "attributes *some* of his improvement to both increasing physical activity and psychotherapy[,]" the ALJ surmised that

16

Plaintiff "is able to perform activities at least at the light exertional level." (*Id.*) In the end, after referencing Plaintiff's subjective comment about being "70% back to his baseline functioning[,]" the ALJ concludes that Plaintiff's "improved migraine condition supports the finding that [Plaintiff] would no longer be absent at least 4 times per month." (*Compare* R. at 29, 498 (emphasis added).)

For the reasons stated above, the April 22, 2014 conclusion that Plaintiff's presentation "is fairly stable since [hi]s last evaluation a year ago," favors a conclusion that Plaintiff's condition had not improved as of April 23, 2014. Moreover, the ALJ assigned "great weight" to this report, which actually states, in part:

> I am pleased with the progress he has made with a psychotherapist with regard to managing his anxiety, and I do feel the skills he has acquired will be beneficial as he works towards returning to school. Neurocognitive test performance, while statistically below his baseline, is not impaired; *I feel he is capable of returning to school and ultimately holding a fulltime job*, and I have provided him academic accommodations to allow him to manage symptoms completing classwork. I have recommended he return to school in the fall 2014, with a reduced course load initially. He states he only has one fall semester classes, and I have recommended that he spread these classes across the year. In the meantime, I have recommended that he purchase those books that he will need for those classes to familiarize himself, which also may help reduce his anxiety related to this transition. *I have also strongly encouraged Clifton to increase his social activities*, as I like him to build up intolerance to environmental sensitivity with that he experiences in busy places. We discussed using this [sic] coping strategies he learned in therapy to assist with this exposure and recovery, progressing in duration. *Overall, Clifton continues to present with deficits that have been consistent and stable, and prognosis for further recovery poor at this point.*

(R. at 498-499 (emphasis added).)  An accompanying "academic accommodations" form checked off items such as "headaches," "environmental sensitivity," "extra time," "test in a quiet environment," and "allow testing across multiple sessions[,]" as well as "note taking" and "extra time."  (R. at 496-497.)

Perhaps, as the ALJ concluded, this report "implies" Plaintiff is capable of "some social interaction."  (R. at 29.)  Nonetheless, Plaintiff convincingly questions how the opinion that "someday, but not as of [April 22, 2014], Plaintiff could hold down a fulltime job . . . [,]" would be evidence for the proposition that "Plaintiff was able to hold down a fulltime job on [April 22, 2014][.]"  (DE 13 at 40 n.16.)  The Commissioner's assertion that the report's "use of the word 'ultimately' *likely* meant that he thought Plaintiff would be capable of obtaining a fulltime job once he obtained his degree," (DE 15 at 12), does not meet the requisite burden of proof and requires too much speculation as to what was going through the ALJ's mind.

> ii.     **The June 25, 2015 psychological evaluation of Georgia Conic, Ph.D.**

At the June 25, 2015 psychological evaluation with Dr. Conic, Plaintiff complained of "depressed mood, panic episodes, uncontrollable mood swings, anger, anxiety, paranoia, inability to relax, poor concentration, and nervousness around people, as well as physical symptoms [of] headaches, dizziness, and

fatigue." (R. at 97, 343, 559.) Dr. Conic described Plaintiff's demeanor as "pleasant and cooperative[,]" and considered Plaintiff's intellectual level as, apparently, "in the average range." (R. at 99, 345, 561.)

This is one of two reports that the ALJ specifically labeled as "evidence of medical improvement" in Plaintiff's TBI. (R. at 29.) However, the report further noted Plaintiff's complaint of "severe headaches and dizziness associated with physical exertion[,]" and that he experiences "Migraine, tension or chronic headaches." (R. at 99, 345, 561.) In addition, Dr. Conic noted that Plaintiff's "[l]evel of concentration appeared to be markedly impaired." (*Id*.) Thus, it is not clear how this piece of evidence supports the conclusion that Plaintiff's "migraine condition" has improved such that he will no "no longer be absent at least 4 times per month." (R. at 29.)

### iii.      The July 7, 2015 CE report of Nathalie Menendes, Psy.D.

Dr. Menendes diagnosed Plaintiff with "mild neurocognitive disorder due to [TBI], without behavioral disturbance," "unspecified anxiety disorder," and "major depressive disorder, recurrent, mild." (R. at 557.) In so doing, she noted:

> Based on today's evaluation, the claimant is able to understand and remember simple and one step instructions and work procedures. While he should be able to understand complex and multi-step instructions and work procedures, *he may have difficulty remembering them. He has difficulty with concentration and consistently completing tasks will likely be difficult. He reports becoming angry easily and having anger outbursts. He may not always be able to*

> *maintain socially acceptable behaviors because of this.*  He seems to
> be able to maintain adequate levels of hygiene and grooming.  He
> should be able to adapt to changes in his environment and routine.

(R. at 556 (emphasis added).)  In addition, Dr. Menendes opined that Plaintiff was

not able to manage his benefit funds.  (R. at 557.)

The ALJ considered Dr. Menendes's opinion as "evidence of medical

improvement" in Plaintiff's TBI.  (R. at 29.)  Moreover, she assigned this opinion

"great weight," on the basis that it was "consistent with the record as a whole[,]

including, but not limited to[,] the opinion of Dr. Collins."  (R. at 30.)  Yet, as

Plaintiff points out, Dr. Menedes also noted that Plaintiff's self-esteem was "low,"

and that Plaintiff "did not appear to exaggerate or minimize his symptoms."  (R. at

555.)  Moreover, given the above-italicized observations, and the fact that Dr.

Menendes described Plaintiff's prognosis as "poor," (R. at 557), the Court agrees

with Plaintiff that Dr. Menedes's report "belies" – rather than supports - the

ALJ's conclusion about his ability to, as he puts it, "perform gainful work on a

regular and sustained basis[.]"   (DE 13 at 38 n.12.)  Perhaps most importantly,

while this report acknowledges a 2012 report diagnosing "[s]ymptoms suggestive

of a closed head injury from playing football[,]"  (R. at 423, 556), it is not clear

how this piece of evidence supports the conclusion that Plaintiff's "migraine

condition" has improved such that he will no "no longer be absent at least 4 times per month." (R. at 29.)[9]

### c.  Recap

In sum, the ALJ concluded that the RFC was supported by the Collins / Sufrinko opinion, this opinion was consistent with the Menendes opinion, and each opinion deserved "great weight." (R. at 30.)  Contrary to the Commissioner's argument that the Court is being asked to "reweigh" the evidence, Plaintiff is arguing that the ALJ's Step 3 and Step 4 "medical improvement" conclusions are "not supported by significant evidence of record." (*Compare* DE 15 at 13, DE 16 at 6.)  In fact, for the reasons stated above, the critical piece of evidence upon which the ALJ relies and to which the ALJ assigned "great weight" supports the conclusion that Plaintiff's condition has remained "stable" from March 2013 through April 22, 2014.  As such, the Commissioner has failed to meet her burden of proof as to the conclusion that a medical improvement occurred as of April 23, 2014 such that Plaintiff became gainfully employable.

### 3.  The Commissioner has not met the burden of proof at Step 8.

---

[9] While the Court found other post-April 23, 2014 medical documents in the administrative record, it does not appear that the April 29, 2014 through May 19, 2015 notes of Plaintiff's former therapist, Edward C. Podany, Ph.D., are at issue in this appeal.  (R. at 342, 513-530.)

As previously noted, at Step 8, the ALJ determined that "[b]eginning April 23, 2014, considering the claimant's age, education, work experience, and [RFC], there have been jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 31.) Plaintiff's "issue presented for judicial review" contends that the Commissioner has not carried her burden of proof that "jobs existed in significant numbers that Plaintiff, given his condition and [l]imitations, could perform on a regular and sustained basis." (DE 13 at 32; *see also* DE 13 at 33.)

"At the final step, the burden shifts to the Commissioner to establish that the claimant can perform jobs available in the national economy." *Muro v. Colvin*, No. 3:16-CV-0090-MMD-VPC, 2017 WL 629237, at *3 (D. Nev. Jan. 25, 2017), *report and recommendation adopted*, No. 316CV00090MMDVPC, 2017 WL 627210 (D. Nev. Feb. 15, 2017) (citing 20 C.F.R. § 404.1594(f)(8)). Here, the ALJ adopted a "beginning April 23, 2014" RFC determination that is consistent with the first hypothetical presented to the VE, and regarding which the VE testified that such an individual could perform work such as a garment sorter, folder, and assembler of small products. (R. at 28, R. at 182-183.) If the Court agrees with the foregoing conclusions, then the VE's testimony as to the first

hypothetical would not constitute substantial evidence in support of the RFC determination.[10]

Still, the Court should consider whether the VE's answers to either of the remaining hypotheticals would constitute substantial evidence for the ALJ's Step 8 conclusion that jobs exist in significant numbers in the national economy that Plaintiff can perform.  The answer is "neither would."  The second hypothetical asked about the effect of being absent from work "about four times a month on an unpredictable basis," and the third hypothetical inquired about an individual who "would be off task about 20 percent of the time."  The VE testified that each condition would "preclude work."  (R. at 184.)

### G.    CONCLUSION

As discussed above, the Commissioner bears the burden of proof when applying 20 C.F.R. § 404.1594.  She failed to meet that burden as to whether a medical improvement had occurred as of April 23, 2014 such that Plaintiff became gainfully employable (Steps 3 and 4) and at Step 8.  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been

---

[10] Relatedly, the Court would not need to consider Plaintiff's argument that the 3,650 regional jobs or the 158,000 national jobs identified by the VE in response the first hypothetical do not constitute "significant numbers."  (DE 13 at 42-43.)

resolved and the record adequately establishes a plaintiff's entitlement to benefits."
(internal quotations omitted)).  The Commissioner previously found Plaintiff to be
disabled and did not meet her burden to establish the removal of the disability.
Neither party has identified a material factual issue which remains unresolved.
Accordingly, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion
for summary judgment (DE 14), **DENY** Defendant's motion for summary
judgment (DE 15), and **REMAND** this matter to the Commissioner for a reversal
and modification to include ongoing benefits, subject, of course, to periodic
review.  20 C.F.R. §§ 404.1594(a).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &
Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some
issues but fail to raise others with specificity will not preserve all the objections a
party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &
Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  February 8, 2018          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on February 8, 2018, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti